NOT DESIGNATED FOR PUBLICATION

No. 114,345

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHAEL LEIKAM,
*Appellant*,

v.

FLATLANDER DIRT WORKS LLC,

and

ADDISON INSURANCE COMPANY,
*Appellees.*

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed June 24, 2016. Affirmed.

*Mitchell W. Rice*, of Mann Wyatt & Rice, L.L.C., of Hutchinson, for appellant.

*James B. Biggs*, of Cavanaugh, Biggs & Lemon, P.A., of Topeka, for appellees.

Before HILL, P.J., STANDRIDGE and ATCHESON, JJ.

*Per Curiam:* Michael Leikam fell off a ladder while working for Flatlander Dirt Works, LLC. He continued working and about 3 weeks later sought help from a doctor. His diagnosis was lower back injuries. Leikam asked for workers compensation benefits and Flatlander disputed the claim, contending the fall from the ladder was not the prevailing factor in causing his back injury. The administrative law judge agreed with Flatlander and in a split decision, the Workers Compensation Board affirmed that decision. Leikam now seeks our judicial review of his claim.

1

*We recount the history of Leikam's fall.*

Leikam worked as a roustabout, performing physical labor in the oil fields for Flatlander. His job involved digging trenches, gluing PVC pipe, hooking up pumping units, assembling steel connections on wellheads, and setting tanks. On February 3, 2014, Leikam was loading oil tanks on a trailer because the tanks needed to be moved. He set a ladder between two tanks on the trailer and climbed up to unhook the ropes from one of the tanks so it could be moved. He was at least 9 feet off of the ground. As he was coming down from the ladder, on about the fifth rung, the ladder fell. Leikam fell the other way, hit his chest on the trailer, flipped head over heels, and then fell the rest of the way to the ground, landing on his back. The fall knocked the wind out of him. But Leikam did not seek medical attention. He continued to perform his regular job duties until February 24. He sought medical treatment for the first time on February 25 because he was in "extreme pain" in his lower back and could no longer do his job.

Leikam told doctors that he injured his back in a fall at work on February 3. His visits to the doctor prompted a workers compensation claim. In a hearing in front of an administrative law judge, Flatlander and its insurance carrier, Addison Insurance Company, stipulated that Leikam suffered a personal injury by accident on February 3 that arose out of or in the course of his employment. They denied that the accident was the prevailing factor in causing Leikam's back injury, condition, disability, or impairment. The judge heard testimony from Leikam at the hearing.

In his deposition, Leikam testified that immediately after the fall, "everything" hurt. "My body hurt, I mean, right across my chest." He testified that his lower back pain was a 10+ on a 0-10 scale, with 10 being the worst pain, after the accident on February 3. He testified that he "was in pain from when it happened" but tried to continue to work until it got to the point where he could not do his job anymore. He performed his regular job duties "to the best of [his] abilities." February 24 was the last day he could complete

2

his job due to pain. On February 25 he could barely walk; he called Joel Younger and said he needed to go to the doctor. Leikam went to his family doctor and had an x-ray. Leikam's x-ray report from February 25 lists his signs and symptoms as "FALL/LOW BACK PAIN."

At the hearing, Leikam was asked whether anything happened on February 20 that made his back flare up or whether it gradually worsened. He responded, "It happened before that. I mean, that was the day I went to work and that's when I knew I could not do it anymore." When asked if it was true that he never mentioned his back pain to his employer until February 24 or 25, he responded, "That is incorrect." He testified he had no prior back injuries. He testified that he did not do anything outside of work that would have injured his back during this timeframe. He has not returned to work. He has pain in his back standing up, walking around, squatting down, and gets sharp shooting pains down his leg.

*Questions about the fall continued.*

Joel Younger, the owner of Flatlander, testified in a deposition that on the day of the accident, he and Amber Younger asked Leikam if he had hurt his head, neck, or back and that Leikam said "no." Joel testified that Leikam continued to perform the same job duties and did not complain that his back was hurt until February 25. Amber, the employee at Flatlander in charge of accident reports, also testified that she asked Leikam if he hurt his head, neck, or back and he said "no." She testified she was not aware that Leikam's back was bothering him until February 25.

Christine Zetocka, the workers compensation representative for United Fire and Casualty, took Leikam's recorded statement on March 5. When asked to describe the symptoms he was having after the fall, Leikam stated, "Just, I had chest ___ my ribs hurt

3

and, you know, just my whole body, my whole body was like aching." Then, the following exchange occurred:

"Q. Why did you wait so long to seek medical attention?

"A. Um-I don't know. I mean, because I was, you know, my ribs were getting better and I was just working through it, and I went to work on Monday the, I don't remember what day it was, Monday the 20, I don't know. The last Monday of February, I went to work on Monday and my back started really hurting like that Thursday and Friday before and then on Monday it was just completely gone. I couldn't do anything.

"Q. What-what happened to make your back start hurting on that Thursday and Friday given it was a couple weeks out from when the accident happened? Did you do anything?

"A. No-no, just like I said. I continued working from ___ injury until Monday and then I went to the doctor that Tuesday.

"Q. Did you make complaints to your employer about the injury, you know, your back bothering you between the 3rd and the 25th?

"A. Um-no, I complained about my ribs still hurting through that period and then once my ribs stopped hurting my back flared up, I mean, I went and just had an MRI done yesterday and the x-rays on Tuesday, last Tuesday."

Leikam's MRI report stated:

"There is a moderate narrowing of the L5-S1 intervertebral disc with disc dehydration and annular fissure. There is mild to moderate facet arthropathy of the L4-5 and L5-S1 levels. The paravertebral soft tissues are grossly unremarkable. At L5-S1, there is a central disc protrusion without significant central canal stenosis."

Leikam was referred to Dr. Vivek Sharma, an orthopedic surgeon. Leikam told Dr. Sharma that he injured his back in an accident at work on February 3.

4

Dr. Sharma testified in a deposition that Leikam suffers from degenerative disc disease that was not caused by the work accident. Degenerative disc disease is dehydration of the disc. It is a congenital or developmental condition that usually progresses with age. The MRI also showed that Leikam had a disc herniation, bulge, or protrusion. Dr. Sharma testified that "[i]t's probable" that Leikam suffered the herniation when he fell. But, he could not give an opinion within a reasonable degree of medical certainty when the tear occurred. Dr. Sharma testified:

> "[L]ooking at his MRI picture, I cannot tell you with certainty whether—because some of these changes are preexisting, like degenerative disk disease, but even with a disk bulge or protrusion, whether that happened or became symptomatic with this injury, I do not—I cannot tell you for certainty because we don't have an MRI prior to this episode."

During a series of redirect and recross questions, Dr. Sharma testified that if the structural changes to Leikam's disc happened before the fall on February 3, then the fall would have only aggravated or exacerbated the condition. But, "under reasonable medical probability . . . he had a degenerative disk when—and angular tear or protrusion happened during that injury. Again, I cannot tell you whether that's the case." He then stated, "I do think that his injury was related to the symptoms he presented with, but whether the MRI changes were related to the injury or not, I cannot answer."

Dr. Sharma testified that symptoms usually present within a week of a herniation. But, he stated "it's possible" the symptoms can present later. When asked if Leikam could have continued to work with no symptoms for 17 days after the herniation, he answered, "It's probable, but unlikely. Sometimes there are tears which happen but which progress with, you know, activity." Later, this exchange occurred:

> "Q. Okay. And, in fact, when he had no back pain for over seventeen days that would indicate to you that it didn't happen on February 3rd, 2014; correct?
> "A. Probably. I can't—

5

"Q.     You just can't tell us—

"A.     I cannot tell you.

"Q.     You can't tell us what the accident damaged?

"A.     Yeah, you know, sometimes people don't seek treatment until that long. Was he in pain and not seeking treatment or he never—I couldn't get—just didn't seek treatment until a little bit of period. I just don't know."

He noted that delayed onset symptoms would "probably" be indicative that degenerative disc disease was a contributing cause.

Dr. Brent Adamson, an orthopedic surgeon, performed a medical records review at the request of United Fire & Casualty. Dr. Adamson did not physically examine Leikam; he did not believe it would be helpful. Dr. Adamson diagnosed Leikam with a herniated disc, degenerative disc disease, degenerative spondylosis of the lumbosacral spine, facet arthropathy, and low back pain. He testified the degenerative disc disease was an age-related change. Leikam had more degenerative changes than usual for his age. He testified that people with degenerative disc disease can become more susceptible to tearing of the disc or a herniated disc. The disc can become degenerative and tear and release "mushy material" that can extrude and cause compression on the nerve.

Dr. Adamson testified that symptoms from a herniated disc usually present "within a few hours to a few days." He did not think it was reasonable for no symptoms to arise in 17 days. "In my opinion that's more of the result of just the natural course of . . . degenerative back and aging." He testified that it was his opinion within a reasonable degree of medical certainty that the fall on February 3 was not the prevailing factor in causing Leikam's back problems and need for medical treatment. He based his opinion on records indicating Leikam experienced no pain in his low back until February 20. But Dr. Adamson also agreed that it was possible that after Leikam tore his disc, his continued work could have caused his disc material to slowly extrude and finally press on a nerve 17 days later. He said, that is not common, but "I can't rule that out, period." But he

6

stated, "In general, the symptoms occur within a few days after trauma for a herniated disc."

Dr. Alexander Bailey, an orthopedic spine surgeon, also performed a records review at the request of United Fire & Casualty. He testified that Leikam's MRI indicates a disc protrusion and annular fissure at L5-S1. He testified that with a fall the development of back pain usually occurs within 24 to 48 hours. Back pain that occurs 17 days later cannot be realistically correlated or connected to a fall. He testified within a reasonable degree of medical certainty that the February 3 accident was not the prevailing factor that caused Leikam's back pain and radicular symptoms. That a fall occurred 17 days earlier was a coincidence. He testified that Leikam has an underlying degenerative disc disease that he believed became symptomatic on or about February 20. He based his opinion on records that indicated Leikam first experienced low back pain on February 20.

Dr. Bailey was asked if a disc protrusion can occur from an injury and then worsen when an individual puts stress and strain on the disc. He responded, "The general answer is yes, but also understand disc protrusion is not the diagnosis of concern in this patient. It's the degenerative and annular tear with it because the disc protrusion is not causing any compression of his neurologic structures."

The administrative law judge appointed Dr. Edward Prostic to perform an independent examination of Leikam. Dr. Prostic testified in a deposition that Leikam suffered an injury at L5-S1 where he had predominantly central disc protrusion, he had a mild right S1 radiculopathy, and he had early signs of instability at L5-S1. He testified within a reasonable degree of medical probability that the prevailing factor in Leikam's injury and resulting disability was the work-related accident on February 3. Dr. Prostic also testified that Leikam had some disc space narrowing that likely preceded the injury.

Dr. Prostic testified that symptoms of a disc protrusion are experienced almost immediately or usually within 3 or 4 days. It would be unusual for a person to not have any lower back complaints until February 25 with this type of injury. Dr. Prostic based his opinion on the history Leikam gave him and the medical records. The medical history in his report states that Leikam reported an injury during a fall on February 3 and that he had gradual worsening of low back pain. The report also notes that Leikam was seen previously by his personal physician and reported an onset of back pain on February 20.

Dr. Prostic did not issue any permanent work restrictions but testified, "If I were to give him restrictions," they would be: occasional lifting of 40-50 pounds, frequent lifting of 20-25 pounds, avoid frequent bending or twisting at the waist, or forceful pushing or pulling.

*Leikam received no compensation because he did not persuade the judge and Board his injuries resulted from his fall at work.*

The administrative law judge found that Leikam failed to sustain his burden to prove the fall was a prevailing factor in causing his lower back condition, need for treatment, or resulting impairment or disability. The judge acknowledged that whether Leikam's fall was the prevailing factor in causing his back complaints turned on *when* Leikam's back complaints developed. The judge stated that Leikam's testimony was "less than clear." The judge concluded that Leikam's back became symptomatic on February 20 because of Leikam's testimony that his back "'flared up'" and "'started really hurting'" around that time. Then, given the medical testimony, the judge concluded that the February 3 fall did not cause Leikam's disc herniation. Rather, Leikam's preexisting degenerative disc disease was the prevailing factor in the development of Leikam's back complaints. Leikam requested a review from the Worker's Compensation Board.

The Board affirmed the administrative law judge's ruling. The Board stated:

8

"While this is a close case, the Board affirms the judge's ruling. Had claimant sustained a traumatically-induced disc lesion, the medical evidence indicates he would have had corresponding symptoms immediately or within just a few days after his February 3 accident. Every testifying physician came to this conclusion. Drs. Adamson and Bailey are the most credible medical experts in this case.

"We do not have for our review all of the initial February 25 medical records. However, claimant's medical history, at least summarized by the testifying physicians, is that he did not have onset of back pain until February 20, some 17 days after the accident. The credible medical evidence is that onset of radicular symptoms 17 days post-accident is too tenuous to support a cause and effect relationship. Claimant also told the claims adjuster his back only really started hurting on February 20 and his leg symptoms started after February 20. Based on the credible evidence, a herniated lumbar disc would have caused radicular symptoms before February 20. We also agree with the judge that Dr. Prostic's prevailing factor opinion was based on an incomplete picture.

"Additional evidence supports our conclusion. Claimant initially denied to respondent that he had a back injury. During the 17 days, he was able to do his regular and physical work before abruptly being nearly unable to walk. Claimant admitted to the claims adjuster that he did not complain to respondent about his back in the interim. At the regular hearing, he denied having not told respondent about back pain between the time of his accident and his last day worked. Such 180º course change is highly suspect. The judge impliedly did not believe claimant's testimony that he had back pain from the date of the accident forward. The more likely cause—the prevailing or primary factor—in claimant's belated back and leg symptoms, injury, medical condition, impairment and disability is his underlying and advanced degenerative disc disease."

Two board members dissented. The dissent gave little weight to the opinion of Drs. Adamson and Bailey that Leikam's degenerative disc disease simply became symptomatic 17 days after the accident as an unfortunate coincidence. The dissent found that Leikam was not symptom-free of back pain for 17 days after the accident. The dissent stated:

"Rather, he indicated February 20 and thereafter was when his symptoms *worsened*. The fact claimant's back pain 'really' got bad on February 20 strongly suggests he had symptoms beforehand as well.

"Moreover, claimant testified he had back pain from the time of his accidental injury and he did his work as best he could, but with increasing difficulty until he could function no longer. We would reach a factual finding contrary to the judge's conclusion that claimant did his work 'without apparent pain or limitation.' From the medical experts' summation of a February 25 medical report—a document that is not in evidence—we would conclude claimant related his symptoms to his February 3 fall and not to some other cause. Claimant told Drs. Prostic and Sharma his injury was due to his accident. Claimant did not have the chance to tell record reviewers, Drs. Adamson and Bailey, why his back and legs hurt. They indicated obtaining a history directly from him may have been helpful.

"While the judge stated claimant's testimony was 'less than clear,' he did not make a credibility determination. Claimant's allegation of back pain is not inconsistent with saying he 'hurt all over.' While the appealed ruling states claimant never specified his back hurt from the date of the fall, his deposition and regular hearing testimony illustrate he fell on his back and was injured thereafter. 'A claimant's testimony alone is sufficient evidence of his own physical condition.' Claimant's testimony is sufficiently credible."

The dissenting board members further concluded that Dr. Prostic gave his prevailing factor opinion with knowledge of reports that the onset of Leikam's symptoms was February 20. The board members also found that Dr. Sharma's testimony about medical "certainty" was legally irrelevant because the standard of proof is based on probability, not certainty. They found that Dr. Sharma's opinion as a matter of probability was that the February 3 accident caused Leikam's herniated disc.

*Leikam attacks the Board's findings.*

Leikam contends that the Board's finding that he had no back pain or symptoms until 17 days after the accident is not supported by the evidence. Leikam further contends that Dr. Prostic's opinion that the work-related accident was the prevailing factor in Leikam's injury was the most credible.

We review a challenge to the Board's factual findings in light of the record as a whole to determine whether the findings are supported by substantial evidence. See K.S.A. 2015 Supp. 77-621(c)(7). This requires the appellate court to (1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determinations, if any; and (3) review the agency's explanation as to why the evidence supports its findings. The court does not reweigh evidence or engage in de novo review. K.S.A. 2015 Supp. 77-621(d); *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014). "Substantial evidence" refers to evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis of fact from which the issue raised could be easily resolved. *Ward v. Allen County Hospital*, 50 Kan. App. 2d 280, 285, 324 P.3d 1122 (2014).

Our work here is governed by the Kansas Judicial Review Act. K.S.A. 2013 Supp. 44-556(a). The Kansas Workers Compensation Act provides that an employer is liable to pay compensation to an employee that suffers personal injury by accident arising out of and in the course of employment. K.S.A. 2013 Supp. 44-501b(b). The work-related accident must be the "prevailing factor" in causing the injury. K.S.A. 2013 Supp. 44-508(d). "Prevailing" as it relates to the term "factor" means the primary factor, in relation to any other factor. K.S.A. 2013 Supp. 44-508(g). An injury is not compensable because work was a triggering or precipitating factor. An injury is not compensable solely because it aggravates, accelerates or exacerbates a preexisting condition or renders a

11

preexisting condition symptomatic. K.S.A. 2013 Supp. 44-508(f)(2). The phrase "arising out of and in the course of employment" does not include injury which occurred as a result of the natural aging process or by the normal activities of day-to-day living. K.S.A. 2013 Supp. 44-508(f)(3)(A)(i). The burden of proof is on the claimant to establish the claimant's right to an award. K.S.A. 2013 Supp. 44-501b(c). "Burden of proof" means the burden of a party to persuade the trier of facts by a preponderance of the credible evidence that such party's position on an issue is more probably true than not true on the basis of the whole record." K.S.A. 2013 Supp. 44-508(h).

*We review the Board's findings.*

The Board first found that if the February 3 fall caused Leikam's herniated disc, he would have developed symptoms immediately or within just a few days after the accident. "Every testifying physician came to this conclusion." We need not repeat here the testimony of Drs. Adamson, Bailey, and Sharma.

But we note that Dr. Prostic's testimony differed from Drs. Adamson and Bailey because Dr. Prostic testified within a reasonable degree of medical probability that the February 3 accident was the prevailing factor that caused Leikam's injury. But while Drs. Adamson and Bailey based their opinions on reports that Leikam experienced no back pain until February 20, Dr. Prostic ascertained from Leikam that he had a "gradual worsening of low back pain" after the accident, rather than a sudden onset. We infer from this that the doctors did not actually disagree over the medical science; rather, they started from different premises.

The dissent pointed out that Dr. Prostic did note a medical report from Leikam's personal physician that listed the onset of Leikam's back pain as February 20. The dissent then assumed that Dr. Prostic's prevailing factor opinion would stay the same regardless of when Leikam's back pain began.

12

But Dr. Prostic was never asked that question. And, such a conclusion is not consistent with Dr. Prostic's testimony that it would be unusual for a person to have no back pain for so long after a disc herniation. It is more likely that Dr. Prostic based his opinion on a gradual worsening of symptoms. At best, how Dr. Prostic would answer the question is unknown, whereas Drs. Adamson and Bailey were clear.

Our review of the record leads us to conclude that all of the medical experts did agree that symptoms of a disc herniation usually present within a few days. Drs. Adamson and Bailey testified the fall was not the prevailing factor if the symptoms presented 17 days later. Therefore, there was substantial evidence to support the Board's finding that a sudden onset of symptoms 17 days after the accident was too tenuous to support causation. According to the medical testimony, if Leikam experienced *no* back pain for 17 days after the accident, his herniated disc was more likely attributable to his underlying degenerative disc disease.

The Board found that Leikam did not have an onset of back pain until February 20, 17 days after the accident. Evidence was presented both supporting and contradicting this finding. The following evidence supports a finding that Leikam had a sudden onset of back pain on February 20:

- A medical report from Leikam's personal physician by physician assistant Jennifer Williams that is not in the record, but discussed in Dr. Prostic's report. The notes of that report indicate that Leikam's onset of back pain was February 20, 2014.
- Joel and Amber Younger both testified that they asked Leikam on the day of the accident if he had hurt his head, neck, or back and that Leikam said "no."

- Joel Younger testified that Leikam continued to perform the same job duties as before the accident and did not complain his back was hurt until February 25.

- There were contradictions in Leikam's testimony. When asked by the insurance adjuster if he made any complaints to his employer about his back between February 3 and 25, Leikam said, "Um-no, I complained about my ribs still hurting through that period and then once my ribs stopped hurting my back flared up . . . ." Then, at the hearing, when asked if it was true that he never mentioned his back pain to his employer until February 24 or 25, he responded, "[t]hat is incorrect."

The following evidence contradicts that finding:

- Leikam's medical records list his injury date as February 3 from the fall off the ladder. He told Dr. Sharma that he injured his back in an accident at work on February 3, "after which he had some pain but went to seek treatment after a week or two." Dr. Prostic's report stated that Leikam had a gradual worsening of pain.

- Leikam testified that he "was in pain from when it happened," but he tried to continue to work until it got to the point where he could not do his job anymore. He testified he performed his regular job duties "to the best of [his] abilities." When asked whether it flared up on February 20 or gradually worsened, he responded, "It happened before that. I mean, that was the day I went to work and that's when I knew I could not do it anymore." Leikam also testified that his lower back pain was a 10+ on a 1-10 scale after the accident on February 3. This testimony indicates that Leikam had back pain immediately after the accident.

14

We note that some of Leikam's testimony was ambiguous. For example, he told the insurance adjuster that his "back started really hurting" the Thursday or Friday before he stopped working. The administrative law judge and the Board interpreted the statement to mean that his back "only" really started hurting on February 20. But the dissenting board members said that the "fact claimant's back pain 'really' got bad on February 20 strongly suggests he had symptoms beforehand as well." Leikam's testimony that his back "flared up" is also open to multiple interpretations.

Leikam testified that immediately after the fall, "everything" hurt. "My body hurt, I mean, right across my chest." The administrative law judge found it significant that Leikam did not specify that his *back* hurt. But the dissenting board members found that the statement impliedly included his back.

The Board's decision was supported by substantial evidence. No credibility determination was made of Leikam's testimony by the ALJ. But the Board reasoned that the ALJ impliedly did not believe Leikam's testimony that he had immediate back pain.

The Board found Leikam's 180-degree change when asked whether he told his employer about his back pain prior to February 24 "highly suspect." Indeed, although not mentioned by the Board, if Leikam's back pain was a 10+ after the accident on February 3, then it is hard to understand why he would tell Joel and Amber Younger that he did not hurt his back on the same day. Leikam offered no explanation for this inconsistency, and it is not the court's job to offer one.

The Board concluded Leikam's symptoms of a back injury began on February 20. That day was mentioned in his personal physician's medical report. It also would seem to be the "Thursday or Friday before" mentioned in Leikam's statement to the insurance adjuster. On that day he "really" started experiencing back pain.

15

*We see no reason to reverse.*

Our test for this question is simply stated. The appellate court must determine whether the evidence supporting the Board's decision has been so undermined by other evidence that it is insufficient to support the Board's conclusion. *Lake v. Jessee Trucking*, 49 Kan. App. 2d 820, Syl. ¶ 4, 316 P.3d 796 (2013).

In fact, a similar issue arose in *Lake*. In May 2008, the claimant had an accident at work where a 12- to 14-foot fiberglass bedliner for a semi-truck came off a forklift and struck him. The claimant and another employee testified that the claimant was obviously hurt at the scene; he walked with difficulty. He and the other employee testified that the claimant promptly reported the accident to his employer, but he said that he had just "'pulled a groin.'" The claimant did not seek immediate medical attention. He continued to work until October 2008. Only 5 days after the accident, he was hospitalized for gastrointestinal problems. There was no reference in those medical records to a back injury. He returned to work after a week. An employee testified that the claimant was weak after the accident and could not do any heavy lifting.

In contrast, one of the owners testified that the claimant did not say he was hurt and did not have noticeable difficulties at work. Three medical reports stated that the claimant reported being symptomatic immediately after the accident. The medical experts' testimony on causation was dependent on *when* the claimant started experiencing symptoms.

The ALJ heard claimant's personal testimony and found that claimant was symptomatic at the time of the accident. The Board, however, rejected the claimant's testimony and reversed. Our court reversed the Board, holding that the Board's findings were not supported by substantial evidence.

16

The panel ruled:

"The ALJ had the opportunity to evaluate Lake's testimony when he appeared in person under oath before the ALJ. The ALJ credited Lake's testimony, especially with regard to Lake's assertion that he sustained the serious back and arm injuries as a result of the work accident. In particular the ALJ found that Lake 'was suffering ill effects from injury at the time of the accident, *per his testimony* and that of Mr. Palmer.'" 49 Kan. App. 2d at 843.

Basically, our court held that the "law does not allow the Board to discount the ALJ's credibility determinations of a claimant based on presumptions, suppositions, and cherry-picked record references of questionable or limited evidentiary value." 49 Kan. App. 2d at 843.

But this case seems to be the inverse. The ALJ heard Leikam testify but did not find Leikam credible or not credible. Instead, the ALJ found that Leikam's testimony was "less than clear" on when he started experiencing symptoms of a back injury.

The Board agreed with the ALJ. Leikam had the burden to prove his entitlement to an award. See K.S.A. 2013 Supp. 44-501b(c). His employer testified Leikam performed the same job functions as before the accident. None of Leikam's coworkers testified that he was having difficulty doing his job. Leikam's testimony that did suggest he had back pain on February 3 was undermined by his employer's testimony, who asked him on that day if he had back pain. Leikam did not have back symptoms from degenerative disc disorder before the accident. And the importance of his personal physician's medical record listing February 20 as the onset of his symptoms was over-emphasized, considering it is not in the record on appeal. But the Board's decision is not so undermined by other evidence that it is insufficient to support the Board's conclusion. See *Lake*, 49 Kan. App. 2d 820, Syl. ¶ 4.

17

The Board emphasized that (1) Leikam initially denied that he had hurt his back when asked by his employer; and (2) he was able to perform his regular and physical work as strong evidence that Leikam's back herniation occurred later, despite his testimony to the contrary. Although a claimant's testimony alone is sufficient evidence of his own physical condition, *Hanson v. Logan U.S.D. 326*, 28 Kan. App. 2d 92, 95, 11 P.3d 1184 (2000), *rev. denied* 270 Kan. 898 (2001), in this case Leikam's testimony was contradicted by other testimony.

We cannot reweigh the evidence or exercise de novo review. K.S.A. 2015 Supp. 77-621(d); *Williams*, 299 Kan. at 795. There was substantial evidence to induce a conclusion that Leikam's back pain did not begin until February 20. Therefore, the Board did not err in determining that Leikam did not meet his burden to prove by a preponderance of the evidence that his work accident was the prevailing factor in causing his injury.

Affirmed.